## AZEL W. BARBER & wife *vs.* BENJAMIN MERRIAM.

In an action to recover damages for a personal injury, a physician who attended the plaintiff after he had been in the care of another physician for two weeks may be asked and testify what, so far as he can judge had been the first physician's treatment, and in what respects it differed from his own; what effect, as far as he could judge, it had upon the plaintiff; and whether or not he saw any evidence that the plaintiff had been injured by his medical treatment.

The statements of a patient to his physician as to the character and seat of his sensations, made for the purpose of receiving medical advice, are competent evidence in his favor, in an action to recover damages for a personal injury, even though such statements were not made till after the action was brought.

TORT to recover damages for the same injury which was the subject of the preceding case.

At the trial in this court, before *Hoar*, J., there was evidence that the female plaintiff, for the first two weeks of her illness, was attended by Dr. Holden, and afterwards by Dr. Weld, but they were never present together. Dr. Weld had previously made a single visit the morning after the accident, and prescribed for her, and made applications at the time. Dr. Weld's deposition was taken, and read to the jury. In that deposition the following questions and answers were allowed to be read to the jury, against the objection of the defendant:

" *Q.* So far as you could judge, what had been Dr. Holden's treatment of Mrs. Barber ? In what respects did it differ from yours ? *A.* His treatment was some counter-irritation of the spine, and some quieting medicines; and, though we both aimed at the same thing, we endeavored to reach it by different processes.

" *Q.* What effect, if any, did Dr. Holden's treatment have upon Mrs. Barber, so far as you could judge? *A.* She continued to improve until the time of her going down stairs; and the presumption is that the result was favorable.

" *Q.* Whether or not you saw any evidence when you visited her on the 17th of March that she had been injured by her medical treatment? *A.* None at all."

Before this testimony was read to the jury, Dr. Holden had

testified that his treatment had consisted chiefly of " nervines, friction and fomentation."

Dr. Guild, who succeeded Dr. Weld in attendance on the female plaintiff, was called as a witness, and was allowed to repeat to the jury the statements of the plaintiff herself, made since the suit was brought, for the purpose of receiving medical advice, as to the character and seat of her injuries and sensations, against the objection of the defendant.

The jury returned a verdict for the plaintiffs, with $2875 damages; and the defendant alleged exceptions.

*G. Putnam, Jr.*, for the defendant. The questions to Dr. Weld called for his statement of matters which could not be within his personal knowledge. The statements of the female plaintiff to Dr. Guild ought not to have been admitted. They would clearly have been incompetent, if made to anybody except a medical attendant. *Bacon* v. *Charlton*, 7 Cush. 581, 586. It has frequently been stated by text-writers and judges that such statements, if made by a patient to a physician, may be given in evidence; but no adjudication of that point has been found. See *Gardner Peerage case*, 170, 175. The reason for such admission must be the improbability of any deception being practised. It is not like the case of death-bed statements, because the party may testify to the same matters. Certainly the exception to the general rule should not in any case be extended further than the reason for it extends. See 1 Greenl. Ev. § 102, *n.* 3. *Palmer* v. *Crook*, 7 Gray, 418, and cases cited. *Aveson* v. *Kinnaird*, 6 East, 196. *Thompson* v. *Trevanion*, Skin. 402. In this case, the commencement of the action before the statements were made exposes them to the greatest suspicion; and the exception to the general rule should not be extended to such a case.

*R. M. Morse, Jr.*, for the plaintiffs.

BIGELOW, C. J. The questions and answers in the deposition of Dr. Weld are clearly competent and were rightly admitted. They are not open to the objections urged by the defendant's counsel. It does not appear that the witness testified to any fact which was not derived from his own personal observation

and examination of the patient. For aught that is disclosed in the exceptions, the knowledge which he had of the previous treatment of the female plaintiff by the physician who first attended her was derived entirely from his own diagnosis, unaided by any statements of other persons.

The other objection relied on in support of the exceptions is also untenable. In *Bacon* v. *Charlton*, 7 Cush. 581, 586, it was held that a party to an action might give in evidence his own complaints, exclamations and expressions, such as usually and naturally accompany and indicate bodily pain or injury; but that all statements of facts and narrations of prior occurrences by him, although connected with and relating to his malady or injury, are incompetent and ought to be excluded. It was intimated in that case that a different rule might be applicable to statements made by a patient to a medical man; and, on consideration, we entertain no doubt that there is a well founded distinction between these two kinds or species of evidence. The opinion of a surgeon or physician is necessarily formed in part on the statements of his patient, describing his condition and symptoms and the causes which have led to the injury or disease under which he appears to be suffering. This opinion is clearly competent as coming from an expert. But it is obvious that it would be unreasonable if not absurd to receive the opinion in evidence, and at the same time to shut out the reasons and grounds on which it was founded. Such a course of practice would take from the consideration of a court and jury the means of determining whether the judgment of the expert was sound and his opinions well founded and satisfactory. Certainly it ought not to be left to the option of the adverse party to determine whether the elements on which the conclusions of a medical witness are based should be drawn out on cross-examination. The party producing the witness and who relies on his opinion should be allowed the privilege of showing that his testimony as an expert is the result of due inquiry and investigation into the condition and symptoms of the patient. both past and present.

It is true that evidence of the statements of a party to his

physician or surgeon of his bodily ailments and symptoms is in its nature hearsay, and is liable to some of the objections which lie against that kind of testimony. Its admissibility is an exception to the general rule of evidence, which has its origin in the necessity of the case. The existence of many bodily sensations and ailments which go to make up the symptoms of disease or injury can be known only to the person who experiences them. It is the statement and description of these which enter into and form part of the facts on which the opinion of an expert as to the conditions of health or disease is founded. As they can be proved only by the declarations of the party whose bodily condition is the subject of inquiry, such declarations must be admitted, or the proof of them would fail altogether. To the argument against their competency, founded on the danger of deception and fraud, the answer is, that such representations are competent only when made to a person of science and medical knowledge, who has the means and opportunity of observing and ascertaining whether the statements and declarations correspond with the condition and appearance of the persons making them, and the present existing symptoms which the eye of experience and skill may discover. Nor is it to be forgotten that statements made to a physician for the purpose of medical advice and treatment are less open to suspicion than the ordinary declarations of a party. They are made with a view to be acted on in a matter of grave personal concernment, in relation to which the party has a strong and direct interest to adhere to the truth.

There can be no doubt that testimony of this character has always been received in the courts of this commonwealth without any serious doubt or question. In *Aveson* v. *Kinnaird*, 6 East, 198, 195, Lord Ellenborough seems to assume that its competency is too clear to admit of discussion. In the proceedings in the *Gardner Peerage case*, 78, 172, 175, it is taken for granted that the statements of a patient to a physician of symptoms and complaints are competent and admissible. The testimony which was offered and rejected in that case was not the declaration of a party in relation to the symptoms or sensations

caused by a present existing disease or malady concerning which the witness was called on to give a medical opinion or advice but it was a statement in regard to an insulated fact, having no connection with the case under investigation, which must have occurred several months previously, which had no relation to the treatment or advice which the witness was called on to give at the time it was stated to him, and the truth of which he could in the nature of things have had no means of verifying by his own examination and observation.

It is suggested, in behalf of the defendant, that the statements in the present case were made by the plaintiff after the commencement of this action. But we do not think that for this reason only they ought to have been rejected. It was a circumstance which may have detracted from the weight of the evidence of the opinion of the physician, so far as it was founded on these statements. But as the statements were made to a medical man and for the purpose of receiving medical advice, they were competent and admissible.

*Exceptions overruled.*