374 August 6, 2025 No. 703

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

HECTOR MOISES ESTRADA-VARGAS,
*Defendant-Appellant.*

Washington County Circuit Court
21CR30739; A178675

Brandon M. Thompson, Judge.

Submitted January 24, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Shawn Wiley, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Patrick M. Ebbett, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, Lagesen, Chief Judge, and Joyce, Judge.*

LAGESEN, C. J.

Affirmed.

_____
* Lagesen, Chief Judge *vice* Jacquot, Judge.

**LAGESEN, C. J.**

Defendant appeals a judgment of conviction for four sex offenses against the victim, Y, committed between 1995 and 1997. Two convictions arose from an incident that occurred when Y was five years old; the other two arose from an incident that occurred when she was six years old. On appeal, he assigns error to (1) the trial court's admission under OEC 404(4) of evidence that he touched a different six-year-old's vagina over her clothes in 1998 and (2) the trial court's admission under OEC 404(4) of evidence that he had touched Y sexually again when she was seven years old in a location outside the county where the case was prosecuted. We affirm.

In 2020, Y reported to law enforcement that defendant had sexually abused her when she was a child. This led to the charges against defendant. The charges were based on two different incidents, one of which took place at defendant's home when Y was five, and another that took place at defendant's home when she was six. During that time period, Y and her family would often visit defendant's home. Defendant was married to Y's aunt, and defendant's sons were close in age to Y. In the incident that took place when Y was five, defendant took her into a bedroom in the home. Defendant removed Y's pants and underwear and inserted his fingers into her vagina. He then took off his own pants and held his penis while he touched Y. Defendant repeated that conduct when Y was six, again pulling Y into a bedroom when she was visiting his home.

Before trial, both parties filed motions relating to other acts evidence. The state moved to admit evidence that defendant had touched the vagina of a different six-year-old girl, A, in a bedroom at his home in 1998. Defendant moved to exclude evidence of other sexual misconduct, including the evidence pertaining to A, as well as evidence of any uncharged sexual crimes committed against Y.

The court held an omnibus hearing to address the admissibility of the evidence regarding A. At the time, the court did not evaluate the admissibility of the evidence regarding the third incident with Y because the case included charges pertaining to that incident. (The trial

court later acquitted defendant on those charges when the evidence showed that they occurred outside of the county.) The state contended that the evidence regarding A was admissible under OEC 404(4), arguing that it was relevant under OEC 401 to show that defendant had a sexual interest in children and otherwise admissible under OEC 403, noting that a limiting instruction could be used to address any potential unfair prejudice from the evidence.

Opposing the admission of the evidence, defendant argued that the evidence was unfairly prejudicial. He also argued that any prejudice could not be cured by a limiting instruction. In support of that argument, defendant presented testimony from an expert, Heroy, that research showed that limiting instructions are not effective at preventing juries from using evidence that a defendant committed similar crimes as anything other than pure propensity evidence.

The trial court ruled that the evidence was admissible. Although the state did not seek to introduce the evidence under OEC 404(3), the court first ruled that the evidence was propensity evidence and, therefore, would not be admissible under OEC 404(3). It then determined that the evidence was relevant under OEC 401 and, further, that the risk of unfair prejudice did not substantially outweigh the probative value of the evidence. The court explained that the evidence was probative of defendant's attraction to children, something that would corroborate Y's testimony.

After the trial court acquitted defendant on the out-of-county charges, the court considered whether evidence of that conduct was admissible with respect to the remaining charges. The court ruled that it was admissible under OEC 404(4) and *State v. McKay*, 309 Or 305, 787 P2d 479 (1990).

In submitting the case to the jury, the court instructed the jury regarding the permissible use of the other act evidence:

> "You have heard evidence from [A] and evidence related to uncharged allegations as to [Y]. To the extent that you give any weight to this evidence, you may only consider it for whether you believe [defendant] has a sexual interest in children. You may not consider it for any other purpose."

The jury found defendant guilty on all charges submitted to it. The trial court sentenced him to a total of 200 months' incarceration.

Defendant appeals. As noted, he assigns error to (1) the trial court's admission of the evidence pertaining to A, and (2) the trial court's admission of the evidence pertaining the out-of-county conduct against Y.

Evidence is admissible under OEC 404(4) if it is relevant under OEC 401, and if its probative value is not substantially outweighed by the danger of unfair prejudice under OEC 403. *State v. Martinez*, 335 Or App 643, 650, 559 P3d 907 (2024), *rev den*, 373 Or 713 (2025) (*Martinez I*). We review the relevance determination under OEC 401 for legal error. *State v. Richey*, 324 Or App 290, 292, 525 P3d 476 (2023). We review the OEC 403 determination for abuse of discretion. *State v Davis*, 372 Or 618, 641-42, 553 P3d 1017 (2024).

We start with defendant's challenge to the evidence regarding A. As an initial matter, we observe that under *State v. Williams*, 357 Or 1, 346 P3d 455 (2015), the evidence was relevant for the purpose of showing that defendant "has a sexual interest in children," something that the jury could permissibly take "into consideration in deciding whether defendant had acted on that interest and with that purpose on the charged occasion." *Id.* at 23. That is so notwithstanding the fact that we have concluded that the inference that a defendant "acted on that interest and with that purpose" on a particular occasion involves propensity reasoning. *See State v. Nolen*, 319 Or App 703, 710, 511 P3d 1110 (2022) (explaining that propensity-based reasoning is required to draw inference that a defendant acted with a sexual purpose toward a particular child from evidence that a defendant has a sexual interest in children).

Consistent with that case law, defendant does not contest the trial court's determination regarding relevance. Instead, defendant challenges the court's analysis under OEC 403 on two grounds. First, he argues that the court abused its discretion based on its determination that a limiting instruction would be sufficient to safeguard against any unfair prejudice arising from the evidence. In support of

that argument, he points to the testimony of his expert and argues that, based on that testimony, we should conclude categorically that "a jury cannot limit its use of allegations that a defendant committed similar uncharged child sexual abuse in the manner contemplated" by case law. However, Oregon's longstanding case law assumes that jurors follow instructions, and this court is not in a position to overrule case law that relies upon, and expressly notes the effectiveness of, limiting instructions in their analyses. *See, e.g.*, *State v. Davis*, 372 Or 618, 641, 553 P3d 1017 (2024) (noting that the court "mitigate[d] any unfair prejudice" by, among other things, "giving the jury a limiting instruction"); *State v. Turnidge*, 359 Or 364, 392, 374 P3d 853 (2016), *cert den*, 580 US 1070 (2017) ("[W]e have long trusted limiting jury instructions to overcome" the prejudicial effect of some evidence (citing *State v. Reyes*, 209 Or 595, 630-31, 308 P2d 182 (1957))); *Green v. Franke*, 357 Or 301, 316, 350 P3d 188 (2015) ("Of particular relevance [to whether the defendant received a fair trial] is the probable effectiveness of limiting instructions given to the jury by the court." (Internal quotation marks omitted.)). Given our limitation in that respect, we reject defendant's first argument and proceed to his second ground to challenge the trial court's OEC 403 ruling.

Defendant's second challenge to the trial court's OEC 403 ruling is that the case law relied upon by the trial court was wrongly decided and, even if it was not, that the trial court improperly applied it to this case. Defendant's argument primarily relies on an assertion that we should overrule our decision in *State v. Moles*, 295 Or App 606, 435 P3d 782 (2019), *vac'd*, 372 Or 812, 558 P3d 848 (2024). That decision, however, was vacated and remanded in light of *Davis*. Accordingly, as we have in other recent cases, we analyze the admission of the evidence under the framework established by *Davis* and articulated in *Martinez I*:

> "First, the court should parse the other 'acts' into constituent parts, where possible, to aid in determining the degree of character present in the proponent's theory of relevancy. Second, the court should consider the probative value of each constituent part of the evidence to determine whether its relevance relies on character reasoning expressly or by implication. Third, the court, in its discretion, may admit evidence

that does not primarily or substantially derive its relevance from character-based propensity reasoning. Finally, whether a court acts within its permissible range of discretion to admit such evidence may depend on whether the court took action to mitigate any unfair prejudice, such as redacting inflammatory details, limiting the state's use of the evidence, and instructing the jury on how it may consider the evidence."

*Martinez I*, 335 Or App at 654-55; *see also State v. Martinez*, 341 Or App 10, 20, \_\_\_ P3d \_\_\_ (2025) (*Martinez II*) (following that analytical framework).[1] We recently applied that framework in *Martinez II* and *State v. Champagne*, 341 Or App 343, \_\_\_ P3d \_\_\_ (2025), and concluded that, under circumstances comparable to those present here, the trial court did not abuse its discretion in admitting similar other acts evidence in a child sexual abuse case.

Applying that framework to this case, we first assess the degree to which we are able to parse the act "into constituent parts \*\*\* to aid in determining the degree of character present in the proponent's theory of relevancy." *Martinez I*, 335 Or App at 654. In this instance, as we have determined on similar facts in recent cases, that type of parsing is not possible: "Here, unlike the other-acts evidence in [*Davis*], which could be parsed into constituent parts with distinct theories of relevancy, only one of which depended on character, the relevance of defendant's prior child sexual abuse in this case necessarily depends on defendant's character, regardless of how one parses it." *Id.* at 660. To the extent that this case involves context as discussed in *Davis* and *Martinez I*, it is no more than that needed to understand the abusive conduct and, more to the point, the conduct's similarity to the charged acts.[2] As was the case in *Martinez*

---

[1] *Martinez II* is unrelated to *Martinez I* and involves a different defendant.

[2] In *Martinez I*, the defendant was convicted of first-degree sexual abuse against B, a friend of his daughter. 335 Or App at 644. The other acts evidence admitted consisted of testimony from C, the defendant's cousin's child, that the defendant had sexually abused her from a young age, culminating in her giving birth to a child by the defendant. *Id.* at 645. We parsed the act into two constituent parts: the abusive conduct and the context of the abuse. *Id.* at 657. We determined that the abusive conduct was offered to prove an element of the crime—sexual purpose—but that the context, including the defendant's familial relationship with C, and her pregnancy, was not relevant to the defendant's sexual purpose. *Id.* at 658-59. The evidence in this case does not include context that is highly inflammatory and irrelevant to the charged offense like in *Martinez I* such that parsing the act is helpful to our analysis.

*II*, where we determined that evidence that the defendant entered and remained in his stepdaughters' bedroom while they were undressed could not be parsed in a meaningful way, parsing the evidence in this case does not aid in our analysis. *See Martinez II*, 341 Or App at 20 ("[W]e do not think it is possible to parse those acts into constituent parts in any meaningful way, nor do the parties assert that it is possible to do so."). We therefore proceed to the next step in the analysis.

Second, we "consider the probative value of * * * the evidence to determine whether its relevance relies on character reasoning expressly or by implication." *Martinez I*, 335 Or App at 654. "Probative value is essentially a measure of the persuasiveness that attaches to a piece of evidence." *Davis*, 372 Or at 634 (internal quotation marks omitted). Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OEC 401. Here, the evidence was offered to show that defendant has a sexual interest in children, which makes it more probable that defendant had a sexual interest in Y at the time of the charged offense and, therefore, "that his alleged actions, if proven, were committed for a sexual purpose." *Martinez II*, 341 Or App at 21. That theory of relevancy "explicitly, and necessarily, rel[ies] on an intermediate character inference, *i.e.*, that a defendant has a sexual interest in children generally," and it "employ[s] propensity reasoning, *i.e.*, that the defendant's sexual predisposition makes it more likely that they acted with a sexual purpose in the charged offense." *Martinez I*, 335 Or App at 656 n 9.

Third, because the trial court, in its discretion, "may admit evidence that does not primarily or substantially derive its relevance from character-based propensity reasoning," we generally must assess the degree to which the evidence at issue derives its relevance from character-based propensity reasoning to assess whether the trial court acted within its discretion in admitting the challenged evidence. *Id.* at 654-55. We nevertheless have recognized that in child sex-abuse cases involving evidence of prior acts

comparable to that at issue here—evidence that we have held relies primarily on character-based propensity reasoning—it is "not necessarily impermissible" to admit the evidence to demonstrate that the defendant acted with a sexual purpose. *Martinez II*, 341 Or App at 21. Thus, as explained in *Martinez II*, the issues in this case are the extent to which the evidence was offered to establish that defendant's actions, if proven to have occurred, were done for a sexual purpose "versus merely to establish that defendant is a bad person and thus was more likely to engage in the charged conduct," and whether the trial court abused its discretion in its OEC 403 balancing. *Id.* at 21-22.

The state offered, and the court admitted, the evidence under OEC 404(4) as evidence of defendant's sexual interest in children as related to the sexual purpose element of the offense. That is a permissible purpose, and defendant does not challenge the relevancy of the evidence. Therefore, the remaining issue is whether the trial court abused its discretion when it balanced the probative value of the evidence against its prejudicial effect. Because the evidence relies upon propensity reasoning—defendant's sexual interest in children—"the *risk* of unfair prejudice that inheres in character-based propensity reasoning was necessarily present here." *Martinez I*, 335 Or App at 659 (emphasis in original). Notwithstanding that risk, the evidence in this case, in the words of *Martinez II*, "seems less likely to inflame jurors or cause the jurors to convict defendant of the charged conduct based upon the proffered evidence of his prior acts than evidence we have concluded a trial court did not abuse its discretion in admitting in other cases." *Martinez II*, 341 Or App at 23; *see, e.g.*, *State v. Terry*, 309 Or App 459, 465, 482 P3d 105 (2021) (court did not abuse discretion in admitting evidence of prior conviction for attempted unlawful sexual penetration of 10-year-old relative and the defendant's statement that he "would have a hard time turning down a 10, 11, 12, or 13-year-old," but it did err in admitting evidence of the defendant's statement that he touched his infant daughter's vagina). The incident with A is less inflammatory than the charged conduct because no penetration occurred and A was not a relative of defendant's, even by marriage. *See Davis*, 372 Or at 634 ("Evidence is unfairly prejudicial if it

improperly appeals to the preferences of the trier of fact for reasons that are unrelated to the power of the evidence to establish a material fact. \*\*\* In the context of OEC 403, 'unfair prejudice' means 'an undue tendency to suggest decisions on an improper basis, commonly although not always an emotional one.'" (Internal quotation marks and citations omitted.)).

On the other hand, given that A and Y were close in age and the other similarities in circumstances, when viewed in the light of our other recent cases, that evidence is at least as probative as evidence that we have concluded was within the trial court's discretion to admit in comparable circumstances. *See, e.g.*, *Martinez II*, 341 Or App at 23 ("Evidence that defendant entered the girls' room while they were undressed is less probative than evidence that a defendant has prior convictions for similar offenses, but it also carries less risk of unfair prejudice.").

Finally, we consider "whether the court took action to mitigate any unfair prejudice, such as redacting inflammatory details, limiting the state's use of the evidence, and instructing the jury on how it may consider the evidence." *Martinez I*, 335 Or App at 655. At the omnibus hearing, the state asked that, if the court admitted the evidence, it provide a limiting instruction to the jury that "serves to tell the jury that they are not to consider [A's] testimony for the purposes of whether [defendant] actually did what he is accused to have done to [Y]." The trial court, as quoted above, gave such a limiting instruction to the jury. That instruction correctly stated what the jury could use the evidence for and that it could not use the evidence for any other purpose. *See id.* at 662 (trial court could have discretion to admit other acts evidence "with a correct limiting instruction that narrows the use of that evidence to proving [the] defendant's sexual purpose"); *see State v. Ezell*, 326 Or App 352, 361, 532 P3d 496, *rev den*, 371 Or 509 (2023) (relying on fact that trial court "crafted an instruction that limited the jury's consideration of [prior bad acts] evidence strictly to determining whether defendant had a sexual interest in children, which is a permitted propensity use according to *Williams*"). As explained above, we assume that juries follow the court's

instructions and that, despite defendant's assertion to the contrary, limiting instructions may overcome the potential for prejudice from certain evidence. *Davis*, 372 Or at 641 (the trial court "mitigate[d] any unfair prejudice" resulting from other acts evidence by, among other things, "giving the jury a limiting instruction").

Accordingly, we conclude that the trial court did not err in its OEC 403 balancing. Its determination was "one—among multiple—legally permissible outcomes," and it did not abuse its discretion under OEC 403 when it admitted the evidence pertaining to A. *Id.*

In his second assignment of error, defendant challenges the trial court's admission under OEC 404(4) of evidence that he had touched Y sexually again when she was seven years old in a location outside the county where the case was prosecuted. That evidence falls squarely under *McKay*, which explained that evidence of uncharged sexual contact between the defendant and the victim is admissible to prove the defendant's "sexual predisposition" for that particular victim. 309 Or at 308 ("Simply stated, the proffered evidence here was admissible to demonstrate the sexual predisposition this defendant had for this particular victim, that is, to show the sexual inclination of defendant towards the victim, not that he had a character trait or propensity to engage in sexual misconduct generally."). Therefore, we reject defendant's second assignment of error without further discussion.

Affirmed.